UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BRIGITTE CARTER,

        Plaintiff,                       Case No.: 3:13-cv-296

vs.

COMMISSIONER OF SOCAL SECURITY,    District Judge Walter H. Rice
                                                        Magistrate Judge Michael J. Newman

        Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB") and/or Supplemental Security Income ("SSI").[2] This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 11), the Commissioner's memorandum in opposition (doc. 13), Plaintiff's reply (doc. 14), the administrative record (doc. 8),[3] and the record as a whole.

I.

**A. Procedural History**

Plaintiff filed for DIB and SSI on September 23, 2009 alleging a disability onset date of August 15, 2003. PageID 271-80. Plaintiff claims disability as a result of a number of alleged

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

impairments including, *inter alia*, joint disease, chronic obstructive pulmonary disease, bipolar disorder, seizure disorder, and blood clots. PageID 52, 329.

After initial denials of her applications, Plaintiff received hearings before ALJ Thomas R. McNichols II on January 4, 2012 and May 30, 2012. PageID 56. The ALJ issued a written decision on June 7, 2012 finding Plaintiff not disabled. PageID 56-73. Specifically, the ALJ's findings were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2005, but not thereafter;

2. The claimant has not engaged in substantial gainful activity since August 15, 2003, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: degenerative joint disease; intermittent rapid heartbeat; history of bilateral lower extremity deep vein thrombosis ["DVT"], with post-thrombotic syndrome of the left lower extremity in 2012; history of chronic obstructive pulmonary disease (COPD); bipolar disorder; and anxiety disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"][4] to perform light work as defined in 20 CFR 404.1567(b)[5] and 416.967(b) except for the following limitations: no climbing of ladders, ropes, or scaffolds; no use

---

[4] "Residual functional capacity," or RFC, is defined as the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a).

[5] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

      of foot controls on the left; no exposure to hazards or concentrated amounts of irritants; no commercial driving; simple, 1 - or 2 - step tasks (requiring little, if any, concentration); low stress jobs (defined as no production quotas and no over-the-shoulder supervision); no direct dealing with the general public; limited contact with coworkers and supervisors; and no teamwork.

6.     The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

7.     The claimant was born [in] 1962, and was 40 years old, which is defined as a "younger individual age 18-49," on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8.     Claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not she has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.    Considering her age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2003, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

PageID 58-72.

      Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 41-43. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B.      Evidence of Record

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 58-71. Plaintiff, in her Statement of Errors, also provides an extensive summary of the record evidence. Doc. 11 at PageID 1402-12. The Commissioner's response to the Statement of Errors offers no objections to Plaintiff's recitation of evidence. Doc. 13 at PageID 1425. Accordingly, except as otherwise noted in this Report and Recommendation, the undersigned incorporates the ALJ's recitation of the evidence as well as Plaintiff's undisputed summary of the evidentiary record.

## II.

A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. §§ 405(g), 1383(c)(3); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the

record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818

(S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

On appeal, Plaintiff argues that the ALJ erred by: (A) failing to properly weigh medical source opinions -- specifically, opinions of treating sources Scott Shaw, M.D., and Ugo Nwokoro, M.D., and Medical Expert ("ME") Joseph Cools, Ph.D.; and (B) concluding that her daily activities and treatment history undermine her allegations of disabling symptoms. Doc. 11 at PageID 1413.

#### A. Medical Source Opinions

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (citation omitted) (alterations in original). This

requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581 F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c). In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions

according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999). A ME's opinion must be evaluated according to the 20 C.F.R. § 404.1527(c) factors. *See Sheppard v. Comm'r of Soc. Sec.*, No. 1:13–CV–00789, 2013 WL 5739704, at *11-12 (N.D. Ohio Oct. 22, 2013). The ALJ's explanation of the weight accorded medical source opinions must be "meaningful." *Ott v. Comm'r of Soc. Sec.*, No. 1:08-CV-00399, 2009 WL 3199064, at *3 (S.D. Ohio Sept. 29, 2009).

An ALJ is not required to accept a physician's conclusion that his or her patient is "unemployable." Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527(d)(3); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician"). However, "[t]here remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

### 1. Treating Source Opinions

Plaintiff argues that the ALJ failed to give good reasons for the weight accorded to the opinions of her treating physicians, Drs. Nwokoro and Shaw. Doc. 11 at PageID 1417. Dr. Nwokoro concluded -- on three separate occasions over a period exceeding three years -- that Plaintiff could stand and/or walk for fifteen to forty five minutes at a time, for up to one to two hours in a workday; could sit for forty five minutes to one hour at a time, for two to four hours in a workday; was limited to lifting ten pounds; and was moderately to markedly limited in the ability to push, pull, handle, bend, speak, and perform repetitive foot movements. PageID 1020,

1022, 1024.  Dr. Shaw opined that Plaintiff could stand and/or walk for one hour at a time, for up to two hours in a workday; could sit for one hour at a time, for up to two hours in a workday; was limited to lifting ten pounds; was moderately limited in the ability to perform repetitive foot movements; and was extremely limited in the ability to push, pull, bend, reach, and handle.  PageID 1016.

The ALJ found that the opinions of Drs. Shaw and Nwokoro were "not entitled to controlling or deferential weight."  PageID 69.  Instead, the ALJ gave "little weight to their assessments" because "they are unsupported by objective medical signs and findings in the preponderance of the record."  *Id*.  The ALJ stated that

> [a]lthough Dr. Nwokoro had the opportunity to treat [Plaintiff] on a fairly regular basis [for almost four years], the findings in her treatment notes do not support such severe limitations.  Dr. Nwokoro's treatment notes generally show only some leg swelling, but the claimant was often noncompliant in taking Coumadin . . . [r]espiratory and musculoskeletal findings were also relatively normal.

*Id.*

The undersigned concludes that the ALJ failed to adequately explain how Dr. Nwokoro's treatment notes afforded no support for his opinions.  *See* PageID 69.  Without meaningful explanation by the ALJ, it is unclear how notes that reflect "leg swelling" do not support Dr. Nwokoro's opinions, especially in light of Plaintiff's three hospitalizations for DVT and leg swelling; and her testimony that she has to elevate her legs several times per day to prevent swelling and often has problems wearing shoes.  PageID 64-65, 102-03.  The lack of explanation by the ALJ in this regard -- and, thus, his lack of reasoning to support his non-disability finding -- deprives the undersigned of the ability to determine "to which aspect of the controlling-weight test this critique is relevant," and to otherwise meaningfully review the ALJ's decision.  *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-77 (6th Cir. 2013).  While Dr. Nwokoro's

treatment notes reflect that Plaintiff was "often noncompliant in taking Coumadin[,]" PageID 69, the ALJ failed to note that, at one point, Dr. Nwokoro attributed Plaintiff's poor compliance with treatment to her severe depression. PageID 824.

Additionally, a review of Dr. Nwokoro's notes reflects -- in addition to leg swelling -- "persistent numbness and tingling in [her] feet." PageID 912, 914. These symptoms "interfer[ed] with her walking, [and] wearing shoes," and resulted in multiple falls and head trauma. PageID 912, 914, 921, 923. An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his [or her] position." *Hawthorne v. Comm'r of Soc. Sec.*, No. 3:13-cv-179, 2014 WL 1668477, at *11 (S.D. Ohio Apr. 25, 2014) (citations omitted). Further, referencing normal respiratory and musculoskeletal findings -- while ignoring or minimizing the abnormal findings discussed above -- is not a good reason to discount a treating physician's opinion. *See Moyers v. Astrue*, No. 10-282-GWU, 2011 WL 3475426, at *5 (E.D. Ky. Aug. 9, 2011).

> As to Dr. Shaw, the ALJ found
>
> [i]t unclear whether [he] is a 'treating' source . . . but even assuming so, his assessment is also unsupported by objective findings. As discussed above, the musculoskeletal and respiratory findings have generally been no more than mild to moderate in nature, and the claimant's cardiovascular condition is relatively controlled on Coumadin and blood thinning medications.

PageID 69. The undersigned is concerned with the ALJ's confusion as to Dr. Shaw's status as a treating source. *See* PageID 69. A review of the record reveals that Dr. Shaw treated Plaintiff for over ten years through Schear Family Practice before rendering his opinion in 2006. *See* PageID 531-623. The ALJ's perfunctory rejection of Dr. Shaw's opinion never mentions the length of the treating relationship -- a factor he was required to consider upon declining to accord Dr. Shaw's opinion controlling weight. 20 C.F.R. § 404.1527(c)(2)(i). Nor does the ALJ

address the medical evidence in Dr. Shaw's notes, such as the results of lower extremity nerve and venous duplex testing, or his referral to physical therapy to treat Plaintiff's low back pain. PageID 546, 549, 550, 555, 1246.

Further, the undersigned finds the ALJ's critique ambiguous because it is unclear what he means by "unsupported by objective findings." PageID 69. Perhaps the ALJ meant that Dr. Shaw's opinion was inconsistent with other medical evidence in the record, though he does not specify the source of such evidence. Or, perhaps, the ALJ found a lack of objective findings in the record altogether. The lack of explanation and ambiguity in the ALJ's critique hinders meaningful review by this Court. *Accord Gayheart*, 710 F.3d at 376-77 (finding error where the ALJ concluded only that the treating physician's opinions were "not well-supported by any objective findings" because the court could not "determine whether the purported problem is that the opinions rely on findings that are not objective . . . or that the findings are sufficiently objective but do not support the content of the opinions").

### 2. Dr. Cools, the ME

The undersigned also finds error in the ALJ's analysis of Dr. Cools's opinion. In his role as Medical Expert, Dr. Cools testified at the hearing that Plaintiff was "limited to work involving no public contact, only brief and superficial contact with coworkers and superiors, no cooperative work, no strict production standards, and in an environment that is not busy or noisy." PageID 70. Even with these limitations, Dr. Cools opined that Plaintiff "would probably miss one to two days per month based on her psychological difficulties, primarily the depression." PageID 112. While the ALJ gave "greatest weight to and . . . essentially adopted the opinion of Dr. Cools, as he is an impartial medial expert who had the opportunity to review the entire record[,]" PageID 70, the ALJ did not include Dr. Cools's absenteeism limitation in the

RFC and provided no explanation regarding such omission. PageID 61, 70. Plaintiff argues that the failure to include this limitation in the RFC constitutes reversible error. The Court agrees.

An ALJ is not required to discuss every piece of evidence in the record or include every limitation in a RFC. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). However, if a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he or she did not include the disabling limitation in the RFC determination. *Cf. Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Social Security Ruling ("SSR") 96-8p states: "[t]he RFC assessment must always consider and address medical source opinions, and address conflicts with an opinion from a medical source," if that opinion is not adopted and incorporated into the RFC. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Here, the ALJ failed to discuss why, in formulating Plaintiff's RFC, he disregarded Dr. Cools's opinion that Plaintiff would consistently miss up to two days of work monthly because of her depression, despite placing the "greatest weight" on all other aspects of Dr. Cools's findings. PageID 70.

The ALJ's decision to omit this portion of Dr. Cools's opinion from the RFC prejudiced Plaintiff. Hypotheticals posed by the ALJ to the Vocational Expert ("VE") failed to include Dr. Cools's opinion regarding absenteeism, and the VE testified that his analysis of job availability would change with this additional limitation. PageID 117-20, 122-23. Specifically, the VE testified that a hypothetical worker, who is absent two times a month, would not be able to maintain competitive employment, and a worker who fluctuated between one and two absences a month would "possibly" be terminated. PageID 122-23. The VE's testimony thus cannot serve as substantial evidence in support of the conclusion, at Step Five, that Plaintiff can perform a significant number of jobs other than her past relevant work, and the ALJ did not satisfy his shifting burden. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

### B. Symptom and Credibility Assessment

Plaintiff also argues that the ALJ erred in finding that her daily activities and treatment history undermine her complaints of disabling symptoms and limitations. Doc. 11 at PageID 1413, 1418-20. "Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a); *Buxton*, 246 F.3d at 773; *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). "First, the ALJ will ask whether . . . there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Id*. (citation omitted). Second, where, as here, the ALJ determines "that such an impairment exists, then he [or she] must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id*. (citations omitted); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff challenges the ALJ's conclusion at part two of this analysis. In evaluating this second prong, the ALJ must consider a number of "[r]elevant factors," namely: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) other treatment undertaken to relieve symptoms; (6) other measures taken to relieve symptoms, such as lying on one's back; and (7) any other factors bearing on the limitations of the claimant to perform basic functions. 20 C.F.R. § 404.1529(c)(3); *see also Rogers*, 486 F.3d at 247.

With regard to credibility, the ALJ, and not this Court, "evaluate[s] the credibility of witnesses, including that of the claimant." *Rogers*, 486 F.3d at 247. A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and

persistence, are not supported by objective medical evidence[.]" *Id*. To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." *Id*. To that end, "the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility'" and such determinations "must find support in the record." *Id*. This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

Here, the ALJ found that Plaintiff's daily activities indicate that "her pain and depression does not seriously interfere with her ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, and interact with others." PageID 68. A review of Plaintiff's testimony at both administrative hearings reveals that Plaintiff spends most of her time "doing absolutely nothing," or simply "sitting in the chair[,]" "lying on the couch[,]" or in bed. PageID 100-02, 150-52. Plaintiff also testified, and reported to examining psychologist Giovanni Bonds, Ph.D., that she washes dishes and straightens the house only "when necessary," does laundry "when necessary" or "when everything is dirty[,]" "buys groceries once a month[,]" and otherwise leaves her house only to attend appointments. PaegID 147, 1270. It is unclear to the undersigned how such restricted activity undermines Plaintiff's contention that she is unable to work full time on a sustained basis.

The ALJ also found that Plaintiff "has not sought the type of treatment one would expect for an individual claiming to suffer from disabling chronic pain." PageID 63. The record,

however, reveals that Plaintiff treated her back pain with medication, injections, and physical therapy; and she was hospitalized for sinus tachycardia in 2009, DVT in 2010, and leg swelling and pain in 2011 and 2012. PageID 64-65, 138, 546, 550.

Finding Plaintiff's first two assignments of error dispositive, however, the undersigned makes no finding with regard to the ALJ's assessment of Plaintiff's credibility and allegations of disabling symptoms. On remand, the ALJ should reassess Plaintiff's credibility and the evidence regarding Plaintiff's daily activities and treatment history.

**IV.**

When the ALJ's non-disability determination is not supported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order the award of benefits. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

In this case, evidence of disability is not overwhelming, as there are conflicting medical opinions in the record regarding Plaintiff's limitations. *See* PageID 68-69. Accordingly, the undersigned concludes that remand for further proceedings is proper and need occur. On remand, the ALJ should reassess all of the medical opinion evidence and determine anew Plaintiff's disability status.

# V.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.


Date: January 28, 2015          *s/ Michael J. Newman*
                                Michael J. Newman
                                United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).